# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MICHAEL NERLAND,
    *Plaintiff,*

vs.

Case No. 16-01300-EFM

NANCY BERRYHILL,
    Acting Commissioner of Social Security,[1]
    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Michael Nerland seeks review of a final decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits under Title II of the Social Security Act. Nerland contends that his claim must be remanded for rehearing because the Administrative Law Judge ("ALJ") committed reversible error in making the residual functional capacity ("RFC") determination. Finding that the Commissioner's decision was not supported by substantial evidence and did not comport with proper legal procedure, the Court reverses the decision of the Commissioner and remands for further consideration.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d).

## I. Factual and Procedural Background

Michael Nerland was born on March 24, 1977. He was 35 years old as of his alleged disability onset date. Nerland completed a master's degree in human resources, and one of eight terms necessary to complete a Ph.D. program. He served in the military as an Army Infantry Officer for nine years, and left the military as a Captain. On April 8, 2015, Nerland filed a Title II application for disability insurance benefits, alleging disability beginning July 7, 2012. Nerland alleged that he was unable to work due to irritable bowel syndrome, post-traumatic stress disorder ("PTSD"), and back pain. His application was denied initially and upon reconsideration. Nerland then asked for a hearing before an ALJ.

ALJ Michael Shilling conducted an administrative hearing on February 3, 2016. Nerland was represented by counsel at the hearing, and he testified about his alleged disabilities and his employment history. The ALJ also heard from a vocation expert at the hearing.

The ALJ issued a written decision on February 23, 2016. The ALJ found that Nerland met the insured status requirements of the Social Security Act through December 31, 2018, and that he had not engaged in substantial gainful activity since his alleged onset date. The ALJ found that Nerland suffered from the following severe impairments: degenerative disc disease of the lumbar spine; obesity; unspecified breathing disorder due to inhalation of titanium dust in Iraq; anxiety; PTSD; depression; and borderline personality disorder.

The ALJ went on to find that Nerland did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found that Nerland had the RFC to:

> [P]erform light work as that term is defined in 20 CFR 404.1567(b) and SSR 83-10, except that nonexertional limitations reduce the claimant's capacity for light work. Specifically, he is able to occasionally lift 20 pounds and frequently lift 10

pounds. He is able to walk or stand for 6 of 8 hours and sit for 6 of 8 hours. He can occasionally climb stairs but never climb ropes, scaffolds, or ladders. He can occasionally balance, stoop, crouch, kneel, and crawl. He should avoid prolonged exposure to chemicals, dust, fumes, noxious odors, and vibrating machinery. He needs to avoid unprotected heights and hazardous moving machinery. He is limited to simple work with occasional interaction with coworkers and the general public. For [these] purposes, he retains the ability to adapt to changes in the workplace on a basic level, and the ability to accept supervision on a basic level.

Given Nerland's RFC, the ALJ found that he was unable to perfrom his past relevant work. But the ALJ determined that significant jobs existed in the national economy that Nerland could perform. Specifically, the vocational expert testified that an individual with Nerland's RFC was capable of working as a mail clerk, folding machine operator, or a shipping/receiving weigher. Accordingly, the ALJ concluded that Nerland had not been under a disability from July 7, 2012 through the date of his decision.

Nerland then requested a review of the decision with the Appeals Council. That request was denied on May 23, 2016, and the ALJ's February 2016 decision became the final decision of the Commissioner. Nerland then filed a Complaint in this Court. Because Nerland has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and

---

[2] 42 U.S.C. § 405(g).

whether the ALJ applied the correct legal standard.³ "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."⁴ The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."⁵

An individual is under a disability only if he "can establish that she has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is expected to . . . last for a continuous period of at least twelve months."⁶ This impairment "must be severe enough that [he] is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [his] age, education, and work experience."⁷

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.⁸ The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.⁹

---

³ *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Cowan v. Astrue*, 552 F.3d 1182, 1184–85 (10th Cir. 2008).

⁴ *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

⁵ *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

⁶ *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

⁷ *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

⁸ *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

⁹ *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from [his] impairments."[11]

Upon assessing the claimant's RFC, the ALJ moves on to steps four and five, which require the ALJ to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[14]

### III. Analysis

Nerland contends that remand is necessary because the ALJ: (1) did not include in the RFC all of the limitations contained in the State agency opinions, to which he afforded substantial weight; (2) did not provide sufficient reasons for discounting the opinion of the

---

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id*.

treating psychologist; (3) did not weigh Nerland's VA disability rating; and (4) did not perform a proper credibility analysis. The Government counters that the mental limitations in the RFC assessment are consistent with the picture painted from the whole record and are supported by substantial evidence. The Government characterizes Nerland's numerous arguments as "focusing on a few trees and ignoring the forest."[15]

The Court will address each of Nerland's arguments in turn.

### A. Dr. Milne and Dr. Cottam

Nerland first argues that the ALJ erred by affording "substantial weight" to the opinions of state agency psychologists Dr. Milne and Dr. Cottam, but choosing not to adopt all of the limitations set forth therein. Specifically, Nerland contends that the RFC assessment and the psychologists' opinions differ with regards to Nerland's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." Drs. Milne and Cottam both opined that Nerland was "moderately limited" in this category. Although the ALJ afforded "substantial weight" to these opinions, the ALJ did not include a corresponding limitation in the RFC assessment.

In this case, Drs. Milne and Cottam both opined that Nerland was "moderately limited" with regards to his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." Dr. Milne based this limitation, in part, on his "findings of fact and analysis of evidence" ("FOFAE"). Under his FOFAE, Dr. Milne noted that Nerland had a history of "trying to get himself fired," skipping school and work, and missing some appointments, but he also noted that Nerland was "doing better at times with more

---

[15] *Bennett v. Barnhart*, 2006 WL 1875887, at *6 (W.D. Wis. 2006).

structure in his life." After noting that Nerland's past relevant work qualified as "skilled," he acknowledged that the job duties required of skilled work exceed Nerland's Mental RFC. But Dr. Milne concluded that Nerland's condition is not severe enough to keep him from performing unskilled work.

Dr. Cottam's FOFAE did not provide a narrative regarding Nerland's ability to adhere to a schedule, maintain attendance, and be punctual. Dr. Cottam simply concluded that Nerland was "moderately limited" in this area. However, under a later category—ability to complete a normal workday and workweek without interruptions—Dr. Cottam did provide a narrative regarding Nerland's moderate limitations. In the narrative, Dr. Cottam wrote that Nerland "has missed some days at work—and would need some accommodations/flexibility." In assessing the RFC, the ALJ seemingly dismissed Dr. Cottam's recommendation, writing that it "is not specific and is simply just a comment." The ALJ then reiterated that the evidence "supports the specific opinions of the State agency psychological consultants regarding the claimant's mental functional capabilities and limitations."

Here, the ALJ committed reversible error by rejecting the limitations that Drs. Milne and Cottam included in their Mental RFCs without providing an explanation. SSR 96-8p specifically provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[16] And an ALJ may not accept some moderate limitations in a Mental RFC form but reject the other limitations without discussion.[17]

---

[16] 1996 WL 374184, at *7; *see also Sitsler v. Barnhart*, 182 F. App'x 819, 822–23 (10th Cir. 2006).

[17] *Frantz v. Astrue*, 509 F.3d 1299, 1302–1303 (10th Cir. 2007).

However, the ALJ did exactly that. The ALJ's RFC determination reflected restrictions consistent with some of the moderate limitations identified on the Mental RFCs, but not with all of them. The ALJ considered the moderate limitations in Nerland's ability to interact with coworkers and the public, adapt to changes in the workplace, and to accept supervision. He did not, however, consider the opinions of Drs. Milne and Cottam that Nerland had moderate limitations in his ability to adhere to a schedule, maintain regular attendance, and be punctual. The ALJ's error in this regard is especially significant considering the unanimous agreement that Nerland was limited in his ability to adhere to a schedule, maintain regular attendance, and be punctual.[18] In addition to Drs. Milne and Cottam, PA Rose and Dr. Bockoven also concluded that Nerland was limited in the ability to adhere to a schedule, maintain regular attendance, and be punctual.

The Commissioner argues that the ALJ adequately explained why he did not incorporate into the RFC Dr. Cottam's statement that "[Nerland] has missed some days at work—and would need some accommodations/flexibility." To make its point, the Commissioner asks the Court to draw a number of "inferences" from the record. The Court declines to do so,[19] especially when the ALJ unambiguously provided a reason: Dr. Cottam's opinion that Nerland needs some accommodations because of his attendance "is not specific and is simply just a comment." Unfortunately for the Commissioner, the ALJ's explanation was wholly inadequate, because the ALJ was required to explain why he was rejecting the psychologists' conclusion regarding Nerland's limitation. The ALJ merely explained why he was rejecting Dr. Cottam's opinion that

---

[18] *See Sitsler*, 182 F. App'x at 822–23.

[19] *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Nerland's job would need to provide accommodations; he failed to address the opinion that Nerland was limited in his ability to adhere to a schedule, maintain regular attendance, and be punctual. Nowhere in the ALJ's decision did he explain why he rejected this particular limitation.

While the ALJ does not have to discuss every piece of evidence, the ALJ is required to discuss the uncontroverted evidence not relied upon and significantly probative evidence that is rejected.[20] On remand, the ALJ should explain why he rejected the state agency psychologists' limitations regarding Nerland's ability to adhere to a schedule, maintain regular attendance, and be punctual.

**B.    VA Disability Rating**

Nerland next argues that the ALJ erred in his RFC assessment by failing to discuss or weigh Nerland's VA disability rating. According to the VA, Nerland has a combined disability rating of 80%, with individual disability ratings as follows: 70% for PTSD, 30% for irritable colon, 10% for burisitis, and 10% for tinnitus. Nerland contends that the ALJ should have considered the VA's determination in evaluating Nerland's current capabilities.

"With regard to the VA's disability determination, the general rule is that it is not binding on the Social Security Administration."[21] "Nevertheless, 'it is evidence that the ALJ must consider and explain why he did not find it persuasive.' "[22] When assessing a claimant's RFC, the ALJ must explain how the impairments that the VA has found to be disabling were factored

---

[20] *Frantz*, 509 F.3d at 1303.

[21] *Kanelakos v. Astrue*, 249 F. App'x 6, 8 (10th Cir. 2007).

[22] *Id.* (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)).

into the claimant's RFC.[23] Although the Tenth Circuit has not articulated what evidentiary weight an ALJ should give the VA's disability findings, it is "beyond dispute" that the ALJ must consider such findings and give them some weight.[24] "A passing reference to another agency's disability finding or a perfunctory rejection of it will not suffice."[25]

Here, although the ALJ appeared to explain why the VA's disability determination was not persuasive, he did not explain how the determination was factored into Nerland's RFC, and did not assign the determination any weight. In fact, the ALJ only mentioned Nerland's VA disability rating once, when he referenced Nerland's 2012 admission into a residential PTSD treatment program at a VA hospital. There, the ALJ wrote: "It was noted that the claimant had a current VA service connected partial disability rating of 70% for his PTSD." At no point in the opinion did the ALJ explain how the VA's disability rating factored into Nerland's RFC, and he failed to assign the determination any weight.

To be fair, the ALJ did discuss Nerland's VA treatment records in reasonable detail. However, discussing VA treatment records is insufficient; the law requires the ALJ to address the VA's disability determination, explain how it factors into the RFC, and assign the determination at least some weight.[26] The ALJ's failure to do so constitutes reversible error.[27]

---

[23] *Winick v. Colvin*, 674 F. App'x 816, 822 (10th Cir. 2017).

[24] *Kotchavar v. Colvin*, 2016 WL 5719735, at *9 (D. Kan. 2016) (quoting *Richter v. Chater*, 900 F. Supp. 1531, 1539 (D. Kan. 1995)).

[25] *Id.*

[26] *See Hoog v. Colvin*, 2016 WL 4593479, at *3 (D. Kan. 2016) ("SSR 06-03p and 10th Circuit law requires explanation in the ALJ decision as to what consideration and what weight the ALJ gave to the VA disability determination."); *Radlin v. Colvin*, 2015 WL 6031382, at *3 (D. Kan. 2015) ("Social security regulations, as well as Tenth Circuit law, requires explanation in the denial decision as to what consideration and what weight the ALJ gave to the VA disability determination.") (citing *Grogan*, 399 F.3d at 1262–63; *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993); SSR 06-03p, 2006 WL 2329939, at *7).

## C. Dr. Bockoven

Nerland next argues that the ALJ further erred in his evaluation of Nerland's RFC because the ALJ did not properly consider the opinion of the treating psychologist, Jerry Bockoven, Ph.D. Dr. Bockoven treated Nerland approximately once per week for almost two years. He opined in his medical source statement that Nerland would miss four days of work per month, would be off task 25% of the time, and that Nerland suffered from a variety of mental limitations that hindered his ability to sustain employment. His statement explained that Nerland had "extreme" limitations in nine specific areas, such as understanding, remembering, carrying out detailed instructions, performing activities within a schedule, and maintaining regular attendance. The statement also provided that Nerland had "marked" limitations in seven areas, such as in his ability to carry out very short and simple instructions, and to interact appropriately with coworkers and the public. And finally, the statement provided that Nerland had "moderate" limitations in the other four areas.

> Regarding Dr. Bockoven's statement, the ALJ wrote:
>
> The undersigned has considered the medical source statement submitted by Jerry Bockoven, Ph.D., one of the claimant's treating therapists at the VA (Exhibit 25F). The undersigned gives minimal weight to Dr. Bockoven's opinions that the claimant is markedly limited in the areas of functioning indicated because they are not supported by the claimant's extensive activities of daily living, the medical records in evidence, or the claimant's GAF scores. The claimant completed his Master's Degree and has worked on his Ph.D. during the period adjudicated, which requires concentration, persistence, and attention to details. It also requires the ability to adapt, meet deadlines, and to accept supervision, instruction and criticism. The form that Dr. Bockoven completed attempts to use such terms as "moderate," "marked," etc. Despite attempts to define these terms, they are not functional limitations. They can only be used as an aid in deciding the presence and degree of functional limitations and do not constitute a residual functional

---

[27] *See Hoog*, 2016 WL 4593479, at *3; *Grogan*, 399 F.3d at 1263; *Hoog v. Colvin*, 2016 WL 4593749, at *3 (D. Kan. Sept. 2, 2016).

capacity assessment and do not state the extent to which these mental capacities of functions could or could not be performed in work setting.

Nerland argues that the ALJ's reasons for discounting Dr. Bockoven's opinion were not supported by substantial evidence. As outlined in his decision, the ALJ discounted Dr. Bockoven's opinion because: (1) it was inconsistent with Nerland's daily activities, specifically his ability to complete his master's degree and work on his Ph.D.; (2) it was inconsistent with the medical records in evidence; (3) it was inconsistent with Nerland's GAF scores; and (4) it was not a RFC assessment and could only be used as an aid in deciding the presence of functional limitations.

While the reasons the ALJ provided for discounting Dr. Bockoven's opinion may have been supported, the ALJ failed to adequately explain why he almost completely disregarded Dr. Bockoven's opinion, but gave the non-treating state agency psychologists' opinions substantial weight. "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[28] If the treating physician's opinion is not entitled to controlling weight, the ALJ still must determine what weight, if any, to assign to the opinion by considering the factors listed at 20 C.F.R. § 404.1527.[29] "These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other[s]."[30]

---

[28] *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks and citation omitted).

[29] *Id.* at 1176–77.

[30] *Walter v. Berryhill*, 2017 WL 1062447, at *4 (D. Kan. 2017).

Ordinarily, a treating physician or psychologist's opinion is "given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant."[31] "[A]n agency physician who has never seen the claimant is entitled to the least weight of all."[32] But the opinion of a State agency psychologist

> may be entitled to a greater weight than a treating source's medical opinion if the State agency . . . psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.[33]

Although the ALJ recognized that Dr. Bockoven was Nerland's treating psychologist, the ALJ gave greater weight to the conclusions of the state agency reviewing psychologists, Drs. Milne and Cottam. In doing so, the ALJ failed to consider the factors listed at 20 C.F.R. § 404.1527, and failed to establish that Drs. Milne and Cottam's opinions were entitled to greater weight under SSR 96-6p. Accordingly, on remand the ALJ must give a legally sufficient explanation for giving greater weight to the opinions of Dr. Milne and Dr. Cottam.

**D.  Nerland's Credibility**

Finally, Nerland argues that the ALJ erred in evaluating Nerland's credibility. The Commissioner did not provide a response. "Credibility determinations are peculiarly the province of the finder of fact," and the Tenth Circuit's precedent "does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he

---

[31] *Larkins ex rel. M.D. v. Colvin*, 568 F. App'x 646, 649 (10th Cir. 2014) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)).

[32] *Id.*

[33] SSR 96-6p, 1996 WL 374180, at *3.

relies on in evaluating the claimant's credibility."[34] "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."

Here, the ALJ's decision set forth the criteria for evaluating Nerland's symptoms and credibility, and then summarized Nerland's allegations. Then, the ALJ explained how he applied the criteria to the testimony and medical records. He wrote:

> The evidentiary facts in the record do not dispute that the claimant has impairments which cause some difficulties. What these pieces of evidence suggest is that claimant's symptoms do not exist at the level of severity alleged in the claimant's written statements and the testimony at the hearing. The claimant's allegations are not fully supported by the objective medical findings in the evidence in the record for the period at issue in this adjudication.

Furthermore, the decision contains "specific reasons for the finding on credibility, supported by the evidence in the case record" and is "sufficiently specific to inform subsequent reviewers of both the weight the ALJ gave to" Nerland's statements "and the reasons for that weight."[35] Accordingly, the ALJ did not err in assessing Nerland's credibility.[36]

## IV. Conclusion

Because the ALJ failed to sufficiently explain his apparent rejection of certain limitations contained in the opinions of both Dr. Milne and Dr. Cottam, failed to properly address Nerland's VA disability rating, and failed to provide a legally sufficient reason for discounting Dr. Bockoven's opinion, the Court reverses and remands for further proceedings. On remand, the

---

[34] *McFerran v. Astrue*, 437 F. App'x 634, 637 (10th Cir. 2011) (quoting *Kepler v. Chater*, 63 F.3d 387, 391 (10th Cir. 1995); *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009)).

[35] *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004).

[36] *C.f. McFerran*, 437 F. App'x at 637 (holding that ALJ's credibility assessment must be put aside when the ALJ's decision did not contain specific reasons for the finding on credibility, supported by the evidence in the case record, and was not sufficiently specific to inform subsequent reviewers of both the weight the ALJ gave to the claimant's statements and the reasons for that weight).

ALJ should consider all of the limitations contained in the medical opinions of Dr. Milne and Dr. Cottam, and explain how the VA disability rating factors into the RFC. Additionally, the ALJ should provide a legally sufficient explanation for giving greater weight to the opinions of Dr. Milne and Dr. Cottam while significantly discounting the opinion of Dr. Bockoven. If the ALJ chooses not to incorporate any limitations from the VA disability rating or Dr. Bockoven's opinion, he must provide a legally sufficient explanation for that decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

Dated this 11th day of August, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE